THOMAS F. ROONEY

v.

OLIVER A. CRARY.

1. STATEMENT.—A lease was executed for a term, the parties covenanting that all permanent improvements were to remain and become a part of the premises at the end of the term without charge to the lessor, and also that

all buildings or improvements made during the term should be deemed part of the realty, and should not be removed except by written consent of the lessor, which he should give upon payment of all rent reserved, and all other dues and burdens.

2. EXTENSION OF LEASE TO ANOTHER AS TENANT.—During the continuance of the lease, appellant purchased of the tenant the buildings erected upon the premises, upon condition that appellee, the lessor, would consent to an extension of the lease, which was done by memorandum on the back of the lease, and appellant went into possession. Upon the expiration of the lease a new one with similar covenants was executed to appellant. *Held,* that the transaction would be construed as an extension of the original lease, and the making of a new lease to appellant merely a mode of carrying out the agreement for extension.

3. FORFEITURE—REDEMPTION.—The lessor declared a forfeiture of the lease for non-payment of rent, took possession, and filed his bill in chancery to enjoin the lessee from taking away the buildings. *Held,* that by the second covenant above mentioned, the lessor had only a lien upon the buildings for payment of the rent, and it was error to decree a foreclosure barring the lessee's right to redeem by payment of the rent in arrear.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding. Opinion filed February 8, 1881.

On the first day of May, 1872, Oliver A. Crary being the owner of certain premises on the northwest corner of West Harrison and Desplaines streets, Chicago, leased the same to Frank Latcham & Co. for the term of five years from that date, at a rent of $1,800 per annum, payable monthly in advance, in payments of $150 each. The lease covenanted to surrender up the premises at the expiration of the term; not to sublet without the consent of the lessor; that on non-payment of rent, the tenancy might be terminated without notice, and possession recovered by an action of forcible detainer; and also the following :

"It is covenanted and agreed by and between the parties, that in case of any permanent improvements, such as a cellar or basement, being made, or walls of stone, brick or other material being used as a foundation or otherwise, that all such are to remain and be a part of said premises at the end of this lease, without charge to the party of the first part.

"It is further covenanted and agreed between the parties

aforesaid, that all buildings erected, or other improvements made or to be made by the said party of the second part upon the above described premises at any time during the time of this lease, shall be held and deemed as a part and parcel of the realty, and shall not be removed in any case, except by consent in writing by the said party of the first part, which said party is to give, when full payment of all the rent reserved shall be fully paid, and all dues, duties and burdens assumed by or obligatory upon the said party of the second part duly performed."

Upon the execution of said lease, Latcham & Co. erected on said premises various structures, consisting of a large frame ice-house, two brick smoke-houses, a brick barn, etc., and also remodeled certain buildings already standing thereon, with a view of fitting up said premises for the business of curing and packing pork, and afterwards carried on said business on said premises up to some time in April, 1875. At about that time Thomas F. Rooney entered into negotiations with Frank Latcham, who had succeeded to all the rights of his firm, for the purchase of said buildings and improvements, together with the tools and fixtures belonging thereto, which negotiations resulted in an agreement by Rooney to purchase said property for $3,600, in case Crary would consent to extend the lease for ten years. To ascertain whether Crary would grant such extension, Rooney and Latcham visited him and stated to him the substance of their contract, and the interview resulted in an agreement by Crary to extend the lease to Rooney for ten years, which agreement was evidenced by the following memorandum, indorsed on the lease and signed by Crary, viz: " This lease to be extended ten years from the 1st of May, 1875, until the 1st of May, 1885, at $125 per month, and to be made out to T. F. Rooney."

Rooney thereupon completed his purchase and went into possession of the premises, and a short time afterwards Crary executed a lease to Rooney, running from May 1, 1875, to May 1, 1885, said lease being of the same tenor and effect as the previous lease to Latcham & Co., except as to the parties and term. Rooney continued to occupy the premises for about two years, when Crary, after serving the notice prescribed by

statute, declared the lease forfeited for non-payment of rent, and shortly afterwards brought suit before a justice of the peace to recover possession, obtained judgment, sued out a writ of restitution and dispossessed Rooney of the premises, including the buildings and improvements which he had purchased from Latcham.

Three days after the recovery of said judgment, Crary filed his bill in chancery, setting up the terms of the lease to Rooney, its forfeiture, the recovery of the judgment for possession, and alleging that said Rooney threatened and was about to tear down, remove and carry away from said premises, parts of the buildings, improvements, chattels real and fixtures attached to and parcel of the realty; and that said Rooney threatened to do other acts upon said premises, which if done would result in great waste and destruction thereto; and praying for an injunction restraining said Rooney from carrying away, removing, pulling down, or in any way or manner disturbing any of the buildings, improvements, chattels real or fixtures situate on said premises; and that on final hearing, said injunction be made perpetual.

Rooney answered, and also filed his cross-bill, claiming an equitable title to said buildings, fixtures and improvements, and praying that the same might be sold, and the proceeds applied to the payment of the rents due to Crary, and the balance, if any, paid to him; that Crary be decreed to account for the rents he may have received therefor, and for other and further relief.

The cause was heard on pleadings and proofs, and a decree entered dismissing the cross-bill, and decreeing a perpetual injunction, in accordance with the prayer of the original bill. From this decree, said Rooney has appealed to this court.

Mr. F. A. SMITH, for appellant; that the intention of the parties erecting the building, at the time of its erection, fixes its character, cited Ewell on Fixtures, 22; Linnehan v. Bass, 41 Conn. 471; Wall v. Hinds, 4 Gray 271; Seeger v. Petitt, 77 Pa. St. 437; Dooley v. Crist, 25 Ill. 551; Kelly v. Austin, 46 Ill. 156.

Compensation, not forfeiture, is the doctrine in equity: Andrews v. Sullivan, 2 Gilm. 327; Weedman v. Calcraft, 10 Ves. 68; 2 Story's Eq. Jur. § 1314; Willard's Eq. Jur. 55.

In cases of forfeiture the tenant has a reasonable time in which to remove his property: Tyler on Fixtures, 427; Antoni v. Belknap, 102 Mass. 193; Mason v. Fenn, 13 Ill. 525.

Mr. H. B. STEVENS, for appellee.

BAILEY, J.  The decision of this case must depend upon the proper construction to be placed upon those covenants in the lease, relating to the removal, at the end of the term, of the buildings and fixtures placed upon the demised premises by the tenant.

A strict construction of the lease to Rooney, would exclude from the scope of those covenants, all the buildings erected and improvements made by Latcham & Co., since those were already on the premises when the lease was executed, and were not placed there " during the time of this lease." Such construction would make all buildings and fixtures existing on the 1st day of May, 1875, the date of the lease, a part of the demised premises which the tenant covenanted to surrender to his landlord at the expiration of the term, and would, in effect, vest in the landlord, without consideration, and that, too, by a title which Rooney would be estopped to deny, all the property purchased by Rooney from Latcham, and for which he had just paid the sum of $3,600.   Such construction should not be adopted, unless the more equitable one is entirely excluded by the terms of the lease.

When viewed in the light of the surrounding circumstances, it is plain that the lease to Rooney was intended to operate merely as an extension, or continuation of the original lease to Latcham & Co., the name of the lessee only being changed. The purchase of the buildings and fixtures by Rooney was only on condition that he could get an extension of the lease for ten years.   The interview with Crary was for the purpose of obtaining such extension.   The purchase by Rooney of the buildings, etc., was fully explained to Crary, and, as a result,

an agreement was indorsed on the original lease, not for a new term to commence May 1, 1875, but for an extension, in the name of Rooney, of the original lease from that date for ten years. The subsequent execution of a lease running from May 1, 1875, must be regarded merely as the mode which the landlord saw fit to adopt to carry out his agreement for an extension of the original term, and the rights of the tenant to the buildings and fixtures must be regarded as relating back to the date of the original lease.

Assuming, then, that the buildings and other improvements in controversy are within the terms of the covenants above mentioned, what are the rights of the parties? These covenants are, that said buildings and improvements shall be deemed a part of the realty, and shall not be removed except by the written consent of the landlord, but it is further provided that the landlord shall give such consent when the rent is fully paid, and the covenants of the lease performed. It is clear that this does not vest the landlord with a complete equitable title to these structures on the non-payment of rent or the breach of any of the covenants of the lease, but merely gives him the right to hold them as a part of the realty until rent is paid and the covenants performed. In other words, he is vested with a lien on said structures in the nature of a mortgage, from which the tenant has the right of redemption.

We think there was no error in dismissing the cross-bill. The tenant had such right to remove the buildings and fixtures and such right only, as was given by the express terms of the lease. It was there agreed, as we have seen, that those structures should be and remain a part of the realty, except in one event, viz, the payment of the rent, etc. In that way only could the tenant entitle himself to their severance. He had no right to have them sold and the proceeds applied to the rent. Not only would such sale contravene the express terms of the covenant, but in case it should fail to realize the full amount due, the landlord would be compelled to allow the buildings to be removed before receiving what he has expressly stipulated for in his lease—the payment of the rent in full. The cross-bill seeks merely to have the buildings, etc., appraised and sold and

Rooney v. Crary.

the proceeds applied to the rent. The tenant was not entitled to that relief, and it was properly denied.

Had the cross-bill been in the nature of a bill to redeem, a different question would have been presented. But such is not its character. It makes no offer to redeem, nor does it pray for permission so to do.

But we think the decree under the original bill should not have barred and foreclosed the tenant of all right to the buildings and fixtures, as it practically does, without according him an opportunity to redeem. The amount of the rent in arrears should have been ascertained and a reasonable time given the tenant to pay it, and on failure to make payment within the time limited, the decree might properly foreclose his rights and perpetually enjoin him from interfering with the property. It should be remembered that, so far as the original bill is concerned, the landlord has presented himself before a court of equity, asking to have his rights in the property in question settled and protected. A court of equity will not aid him in taking advantage of, and enforcing the forfeiture of his tenant's term, except upon equitable conditions. The least that can be required of him is, that he give his tenant an opportunity within a reasonable time, to avail himself of the terms of the covenant, by paying the rent and thus entitling himself to the possession of the buildings and fixtures.

If the landlord, since he took possession, has derived any actual benefit from the buildings, etc., by way of an enhanced rent, or otherwise, the tenant should receive credit for the same in the statement of the account for rent; and on the other hand, the landlord should be allowed interest on the rent in arrears from the time the same became due.

The decree will be reversed and the cause remanded for further proceedings in accordance with this opinion.

Decree reversed.